STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 CA 1291

IN THE MATTER OF DR. ERIC [R.] CERWONKA, PSY.D

JUDGMENT RENDERED: **JUN 2 6 2020**

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number 656587 • Section 24

The Honorable R. Michael Caldwell, Judge Presiding

* * * * * * *

| | |
|---|---|
| L. Lane Roy<br>Elizabeth C. Austin<br>Lafayette, Louisiana<br><br>Timothy T. Roniger<br>New Orleans, Louisiana | ATTORNEYS FOR APPELLANT,<br>PLAINTIFF—Eric R.<br>Cerwonka |
| Amy Groves Lowe<br>Baton Rouge, Louisiana | ATTORNEY FOR APPELLEE,<br>DEFENDANT—Louisiana State<br>Board of Examiners of<br>Psychologists |
| Edward J. Walters<br>Joseph E. Cullens, Jr.<br>Baton Rouge, Louisiana | ATTORNEYS FOR AMICUS CURIAE<br>APPLICANTS—Jennifer Rogers<br>and Grant Rogers |

* * * * * * *

**BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

**WELCH, J.**

Eric R. Cerwonka appeals a district court judgment on judicial review that denied his petition for judicial review and affirmed an opinion and order of the Louisiana State Board of Examiners of Psychologists ("LSBEP"), revoking his license to practice psychology in the State of Louisiana. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

At all times material, Dr. Cerwonka was licensed by the LSBEP as a psychologist and engaged in the practice of psychology in the State of Louisiana. On October 20, 2015, Jennifer Rogers ("JR") and Grant Rogers ("GR") (collectively, "complainants") filed a Request for Investigation form with the LSBEP setting forth certain allegations against Dr. Cerwonka. On January 25, 2016, the LSBEP notified Dr. Cerwonka via certified mail of the complaint against him and its initiation of an investigation into the allegations. After reviewing Dr. Cerwonka's written response, the LSBEP Complaints Coordinator determined that further investigation was required and assigned an investigator to the matter.[1]

On August 5, 2016, the LSBEP sent supplemental notice via certified mail to Dr. Cerwonka through his then-attorney of record, Don. S. McKinney, setting forth additional allegations and potential violations of the LSBEP's rules and regulations based on the findings of LSBEP's investigator. Dr. Cerwonka did not respond to the additional allegations.

On September 27, 2016, the LSBEP filed a formal administrative complaint against Dr. Cerwonka, No. P15-16-03C, alleging violations of La. R.S. 37:2359(A), (B)(2)(c), (B)(12), (B)(13), (B)(14), and American Psychological

---

[1] See La. R.S. 37:2361(A) ("The [LSBEP] may investigate any evidence or allegation which appears to show that any person is or may be in violation of any provision of this Chapter."). See also LAC 46:LXIII.1503(F) ("The [LSBEP] shall determine whether the complaint warrants further investigation.").

2

Association ("APA") Ethical Standards 2.06, 3.04, 3.05(a)(2) and (a)(3), 3.06, 3.08, 7.07, 10.05, 10.06, 10.08(a) and (b), and 10.10(a) and (c).[2]

At a **Bertucci** meeting[3] held on October 26, 2016, Dr. Cerwonka offered no contradictory evidence or testimony that disputed the violations alleged, nor could a resolution or informal offer be reached. Following the meeting, the LSBEP summarily suspended Dr. Cerwonka's license. Thereafter, the LSBEP scheduled a formal disciplinary hearing for November 10 and 11, 2016,[4] to determine whether it should suspend, revoke, place on probation, require remediation for a specified time, or take any other action specified in the LSBEP's rules and regulations with respect to Dr. Cerwonka's license.

Dr. Cerwonka filed a petition for stay order of the LSBEP's summary suspension of his license with the Nineteenth Judicial District Court ("19th JDC").[5] Following a hearing on November 30, 2016 and December 7, 2016, the district court rendered judgment on December 8, 2016, decreeing that pending a formal disciplinary hearing before the LSBEP, Dr. Cerwonka was prohibited from practicing pursuant to his psychology license in the State of Louisiana. Dr. Cerwonka did not seek review of the December 8, 2016 judgment.

The LSBEP held a formal disciplinary hearing on January 12 and 13, 2017, regarding the administrative complaint against Dr. Cerwonka. Thereafter, the LSBEP rendered an opinion and order on February 10, 2017, revoking Dr.

---

[2] The Ethical Standards are found in the APA's ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT and have been adopted under Chapter 15, Part LXIII of Title 46 of the LAC. The referenced Ethical Standards mirror LAC 46:LXIII.1305(F); 1307(D), (E)(1)(b) and (c), (F), (H); 1315(G); 1321(E), (F), (H)(1) and (2), and (J)(1) and (3).

[3] A licensee is given the opportunity to show compliance with the requirements for the retention of a license and that the complained of actions do not violate law or agency rules before the institution of formal adjudicatory proceedings, when the issue is one of suspension, revocation, annulment, or withdrawal of an existing license. La. R.S. 49:961(C); **Louisiana State Board of Medical Examiners v. Bertucci**, 593 So. 2d 798, 801 (La. App. 4th Cir. 1/16/92).

[4] The formal disciplinary hearing was continued to January 12 and 13, 2017.

[5] See Docket Number 652936, Div. D, 19th JDC, Parish of East Baton Rouge, State of Louisiana.

3

Cerwonka's license to practice psychology in the State of Louisiana and ordering him to pay all costs of the LSBEP proceedings, in the total amount of $119,991.98.[6] Dr. Cerwonka filed a request for reconsideration/retrial, which the LSBEP denied.

Dr. Cerwonka sought review of the LSBEP's February 10, 2017 opinion and order by filing a petition for judicial review with the 19th JDC.[7] Dr. Cerwonka alleged that the LSBEP presented no substantial evidence demonstrating that he should have his license to practice psychology revoked. Dr. Cerwonka also asserted that the LSBEP violated his right to due process.

Following oral argument and briefs submitted by the parties, the district court held that the LSBEP violated Dr. Cerwonka's right to due process in two aspects: (1) allowing Lloyd Lunceford, a member of the same law firm as LSBEP's general counsel, Amy Groves Lowe, to serve as presiding officer of the administrative proceeding; and (2) allowing James R. "Jim" Raines, who represented Dr. Cerwonka in a prior child custody matter, to serve as LSBEP's prosecuting attorney. The district court signed a judgment on July 26, 2017, vacating the LSBEP's February 10, 2017 opinion and order, and ordering that if the LSBEP prosecuted Dr. Cerwonka again for the same matters, it was prohibited from using a LSBEP attorney and a presiding officer from the same firm and the same presiding officer or prosecuting attorney from the prior hearing.

The LSBEP appealed the district court's July 26, 2017 judgment. On appeal, this court reversed the district court's July 26, 2017 judgment and remanded the matter to the district court to consider the remaining issues raised in Dr. Cerwonka's petition for judicial review. See **Matter of Cerwonka**, 2017-1199 (La. App. 1st Cir. 4/11/18), 249 So. 3d 30, 31, writ denied, 2018-0760 (La.

---

[6] We attach the LSBEP's February 10, 2017 opinion and order as **EXHIBIT A** to this opinion.

[7] See Docket Number 656587, Sec. 24, 19th JDC, Parish of East Baton Rouge, State of Louisiana.

4

9/21/18), 252 So. 3d 917. This court held the fact that the presiding officer—Mr. Lunceford—was from the same law firm as LSBEP's general counsel—Ms. Lowe—did not violate Dr. Cerwonka's due process rights. **Matter of Cerwonka**, 249 So. 3d at 36. This court further held that allowing James R. "Jim" Raines, who represented Dr. Cerwonka in a prior child custody matter, to serve as LSBEP's prosecuting attorney did not violate Dr. Cerwonka's due process rights. **Matter of Cerwonka**, 249 So. 3d at 36-38. Thereafter, Dr. Cerwonka filed a writ of certiorari with the Louisiana Supreme Court, which was denied. **Matter of Cerwonka**, 2018-0760 (La. 9/21/18), 252 So. 3d 917.

Following remand, the LSBEP filed a rule to show cause, requesting that the district court review the February 10, 2017 opinion and order of the LSBEP on the merits.[8] The district court set the matter for oral argument on February 4, 2019.

Following the February 4, 2019 hearing on the merits of Dr. Cerwonka's petition for judicial review, the district court denied Dr. Cerwonka's petition and affirmed the February 10, 2017 opinion and order of the LSBEP. In accordance with its ruling, the district court signed a judgment on judicial review on February 19, 2019. Dr. Cerwonka now appeals.

## STANDARD OF REVIEW

The Louisiana Administrative Procedure Act (the "Act") governs the judicial review of a final decision in an agency adjudication, setting forth the exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal at La. R.S. 49:964(G):

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

---

[8] On behalf of the LSBEP's position, a law firm that was not involved in the case below—Walters, Papillion, Thomas, Cullens, LLC—filed motions for leave to file *amicus curiae* briefs on behalf of the complainants. The district court granted the motions.

5

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(6) Not supported and sustainable by a preponderance of the evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

Any one of the six bases listed in the Act is sufficient to modify or reverse an agency determination. **Johnson v. Strain**, 2015-0714 (La. App. 1st Cir. 11/6/15), 183 So. 3d 562, 564. In an administrative agency case, the district court acts as a reviewing court. The district court's standard of review in reviewing the factual findings of the administrative agency is manifest error. The district court may only reverse the administrative tribunal's exercise of discretion and conclusions upon finding that the agency's action was arbitrary and capricious. **Save Ourselves, Inc. v. Louisiana Envtl. Control Comm'n**, 452 So. 2d 1152, 1159 (La. 1984); **Rochon v. Whitley**, 96-0835 (La. App. 1st Cir. 2/14/97), 691 So. 2d 189, 192. An administrative agency's conclusion is "capricious" when it has no substantial evidence to support it. Likewise, the word "arbitrary" implies a disregard of evidence or the proper weight thereof. **Marsellus v. Dep't of Pub. Safety & Corr.**, 2004-0860 (La. App. 1st Cir. 9/23/05), 923 So. 2d 656, 661. In reviewing such actions, courts must be cognizant of the strong presumption of

6

validity and propriety in such administrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession. **Montalbano v. Louisiana State Bd. of Med. Examiners**, 560 So. 2d 1009, 1011 (La. App. 4th Cir. 1990). Given the jurisprudential presumption of correctness of an agency's actions, Dr. Cerwonka bears the burden of proving the record contains no facts that would establish the validity of the charges levied against him. See **Cranford v. Louisiana State Bd. of Practical Nurse Examiners**, 2008-0209 (La. App. 4th Cir. 10/1/08), 996 So. 2d 590, 601.

Once a final judgment is rendered by the district court, an aggrieved party may seek review by appeal to the appropriate appellate court. La. R.S. 49:965; **Johnson**, 183 So. 3d at 564. Our appellate review of the district court's judgment is *de novo*, without regard for the factual findings or legal conclusions of the district court. **Tomorrow's Inv'rs, LLC ex rel. Jones v. State ex rel. Louisiana Gaming Control Bd.**, 2011-1616 (La. App. 1st Cir. 3/23/12), 92 So. 3d 364, 367, writ denied, 2012-0886 (La. 6/1/12), 90 So. 3d 444. Consequently, this court will conduct its own independent review of the record in accordance with the standards provided in La. R.S. 49:964(G). See **Johnson**, 183 So. 3d at 564.

## LAW AND DISCUSSION

The law and rules governing the practice of psychology in the State of Louisiana are found in Chapter 28 of Title 37 of the Louisiana Revised Statutes[9] and Part LXIII of Title 46 of the Louisiana Administrative Code. Louisiana Revised Statutes 37:2352(7)[10] provides, in pertinent part:

---

[9] The version of the statutes found in Chapter 28 of Title 37 regarding the practice of psychology that are applicable to the instant matter are those that were in effect at the time the LSBEP rendered its February 10, 2017 opinion and order.

[10] Louisiana Revised Statutes 37:2352 was last amended by 2018 La. Acts 206, § 3 (eff. Aug. 1, 2018); however, the amendments were technical corrections that did not substantively alter Section 2352.

"Practice of psychology" is defined as the observation, description, evaluation, interpretation, and modification of human behavior, by the application of psychological principles, methods, and procedures, for the purpose of eliminating symptomatic, maladaptive, or undesired behavior, and of improving interpersonal relationships, work and life adjustment, personal effectiveness, behavioral health, and mental health.

A psychologist is any person licensed as a psychologist under Chapter 28. La. R.S. 37:2352(9). The LSBEP is a state agency created "to safeguard the life, health, property, and the public welfare" of the citizens of the State of Louisiana by protecting "the people of this state against the unauthorized, unqualified, and improper application of psychology." La. R.S. 37:2351.[11] "A psychologist and anyone under the supervision of a psychologist shall conduct their activities in conformity with ethical and professional standards promulgated by the [LSBEP] under its current rules and regulations." La. R.S. 37:2359(A).[12]

The LSBEP is empowered to suspend, place on probation, revoke any license, or take any other action specified in the LSBEP's rules and regulations. See La. R.S. 37:2353(C)(4)[13] and La. R.S. 37:2359(B);[14] **Bond v. Louisiana State Bd. of Examiners of Psychologists**, 2009-1735 (La. App. 1st Cir. 6/11/10), 2010 WL 2342755, at *1 (unpublished). As provided for in La. R.S. 37:2359(B):[15]

The board shall have the power and duty to suspend, place on probation, require remediation for a specified time, revoke any license to practice psychology, any provisional license to practice psychology, or any license to practice as a specialist in school psychology issued by

[11] Like La. R.S. 37:2352, Section 2351 was amended by Act 206; however, the amendments were technical corrections that did not substantively alter Section 2351.

[12] Louisiana Revised Statutes 37:2359 was amended by 2017 La. Acts 234, § 1 (eff. June 14, 2017) and 2018 La. Acts 515, § 2 (eff. Aug. 1, 2018); however, these amendments did not alter the substance of subsection (A).

[13] Similar to La. R.S. 37:2359, La. R.S. 37:2353 was amended by Act 234 and Act 515; however, these amendments did not alter the substance of subsection (C)(4).

[14] As stated in n.12, *supra*, La. R.S. 37:2359 was amended by Act 234 and Act 515; however, the substance of the amendments to subsection (B) is not at issue on appeal.

[15] See n.14, *supra*.

the board, or take any other action specified in the rules and regulations whenever the board ... shall find by a preponderance of the evidence that a psychologist ... has engaged in any of the following acts or offenses:

\*\*\*

(2) Practicing psychology in such a manner as to endanger the welfare of clients or patients, including but not limited to:

\*\*\*

(c) Gross malpractice, repeated malpractice, or gross negligence in the practice of psychology.

\*\*\*

(12) Violation of the code of ethics adopted in the rules and regulations of the board or other immoral, unprofessional, or dishonorable conduct as defined in the rules and regulations of the board.

(13) Inability to practice psychology with reasonable skill and safety to patients or clients by reason of illness, inebriation, misuse of drugs, narcotics, alcohol, chemicals, or any other substance, or as a result of any mental or physical condition.

(14) Violation of any of the provisions of this Chapter or of the rules and regulations promulgated by the board thereunder.

The Legislature has also adopted the Ethical Standards found in the APA's ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT under the administrative code. See LAC 46:LXIII.1301-1321.

In furtherance of its mission, the LSBEP is empowered to hold hearings under the Act relative to potential violations by those licensed as psychologists. See La. R.S. 37:2353(C)(5)[16] and La. R.S. 37:2359(C);[17] see also La. R.S. 49:950, et seq. Additionally, the Act grants the LSBEP the power to issue subpoenas for the production of books, papers, and other documentary evidence. La. R.S. 49:956(5)(a). Any person aggrieved by an action of the LSBEP may seek judicial

---

[16] As stated in n.13, supra, La. R.S. 37:2353 was amended by Act 234 and Act 515; however, the substance of the amendments to subsection (C)(5) is not at issue on appeal.

[17] As stated in n.12, supra, La. R.S. 37:2359 was amended Act 234 and Act 515; however, the substance of the amendments to subsection (C) is not at issue on appeal.

review in the 19th JDC in accordance with the Act. See La. R.S. 37:2353(E);[18] **Bond**, 2010 WL 2342755, at *1.

### A. Due Process Violations

In his sole assignment of error, Dr. Cerwonka raises due process violations, arguing that the LSBEP's prosecution and trial of the administrative complaint was "constitutionally flawed" and "cannot be the basis" for revoking his license to practice psychology in the State of Louisiana.

#### 1. Sufficiency of the Alleged Violations

Dr. Cerwonka argues that the alleged violations charged by the LSBEP in the notices and the administrative complaint were "virtually without any detail, dates, times or places, removing the opportunity for [him] to appropriately respond to them, much less investigate the validity of the charges."

The Act, the statutes governing the practice of psychology in the State of Louisiana, the administrative code, and the LSBEP's policies and procedures provide guidance on the requirements for the notices of charges levied against licensed psychologists for alleged violations of the rules, regulations, and/or ethical standards governing licensed psychologists. As provided for in LAC 46:LXIII.1501(A), the rules found in Part LXIII of Title 46 of the administrative code "shall be applicable to any action of the [LSBEP] to withhold, deny, revoke or suspend any psychologist's license on any of the grounds set forth in R.S. 37:2359 or under any other applicable law, regulation or rule, when such action arises from a complaint as defined in this section."

Upon receipt of a complaint—defined as any information indicating that there may be grounds for disciplinary action against a licensed psychologist—the LSBEP may initiate and take such action as it deems appropriate. LAC 46:LXIII.1503(A) and (B). Upon receipt of complaints from persons other than

---

[18] As stated in n.13, *supra*, La. R.S. 37:2353 was amended by Act 234 and Act 515; however, these amendments did not alter the substance of subsection (E).

the LSBEP or a licensed psychologist (as in the instant matter), the LSBEP forwards the Request for Investigation form to the licensee and determines whether the complaint warrants further investigation. LAC 46:LXIII.1503(D) and (F). If the LSBEP determines further investigation is warranted, it notifies the licensee that a complaint has been filed. Notice shall include a short and plain statement of the nature of the complaint; references to the statutes, rules, or ethical standards which may be involved; copies of the applicable laws, rules, and regulations; and a request for cooperation in obtaining a full understanding of the circumstances. LAC 46:LXIII.1505(A). The licensee is required to provide a written response within thirty days of the notice. LAC 46:LXIII.1505(B). The LSBEP may conduct further investigation and communicate with the licensee in an effort to seek a resolution of the complaint without the necessity of a formal hearing (*i.e.*, a **Bertucci** meeting). La. R.S. 49:961(C); LAC 46:LXIII.1505(D). After the completion of its investigation, if the LSBEP determines that the circumstances warrant the withholding, denial, revocation, or suspension of a psychologist's license, the LSBEP shall then initiate formal adjudicatory proceedings. La. R.S. 49:961(C); LAC 46:LXIII.1511(A).

### *a. Notice of Complaint*

Regarding the requirements of the notice of a complaint, La. R.S. 49:955 provides, in pertinent part:

> A. In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice.
>
> B. The notice shall include:
>
> \*\*\*
>
> (3) A reference to the particular sections of the statutes and rules involved;
>
> (4) A short and plain statement of the matters asserted.
>
> If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice

11

may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished.

The administrative code provides, at LAC 46:LXIII.1505(A):

A. If the [LSBEP] determines that a complaint warrants further investigation, the [LSBEP] shall notify the licensee or applicant against whom the complaint has been made (hereinafter referred to as "respondent"). The notice to the respondent shall include the following:

1. notice that a complaint has been filed;

2. a short and plain statement of the nature of the complaint;

3. a reference to the particular sections of the statutes, rules or ethical standards which may be involved;

4. copies of the applicable laws, rules and regulations of the board; and

5. a request for cooperation in obtaining a full understanding of the circumstances.

Section 7003(B)(3) of the LSBEP's POLICY & PROCEDURES MANUAL, provides, in pertinent part:

If the review reveals evidence of possible ethical violation(s), then the Coordinator requests, in writing, that the [LSBEP] office assign the file an official complaint number and assign the complaint for investigation.

\*\*\*

(b) The Respondent is noticed, via certified mail, regarding the complaint and any potential violations in accordance with the LAC §1505.A.1-5. The Respondent is given 30 days to respond in writing. Upon request and for good cause shown, the Respondent may be granted an extension of time in which to formulate a response[,] provided the extension will not interfere with any prescriptive dates established by statute or regulation[.]

Here, the LSBEP determined that the complaint made against Dr. Cerwonka required further investigation. See LAC 46:LXIII.1503(B) and (F). Accordingly, the LSBEP provided written notice to Dr. Cerwonka, via certified mail on January 25, 2016, that a complaint had been filed. The LSBEP provided Dr. Cerwonka

12

with supplemental, written notice via certified mail on August 5, 2016, sent to his then-attorney of record, Don S. McKinney, that additional claims were being investigated. See LAC 46:LXIII.1505(A).

Both notices indicated that a complaint had been filed against Dr. Cerwonka. See La. R.S. 49:955; LAC 46:LXIII.1505(A)(1); Section 7003(B)(3)(b) of the LSBEP POLICY & PROCEDURES MANUAL. The January 25, 2016 notice to Dr. Cerwonka stated: "This is to notify you that a formal complaint has been lodged against you with the [LSBEP]...." Likewise, the August 5, 2016 notice provided: "This is to notify you that in the course of the investigation of the matter referenced above ... additional claims are being investigated...."

Both notices contained a short and plain statement of the nature of the complaint. See La. R.S. 49:955(B)(4); LAC 46:LXIII.1505(A)(2). The January 25, 2016 notice to Dr. Cerwonka provided, in relevant part:

> The core of this complaint ... is that you allegedly had inappropriate feelings for [JR] and that you used your professional position and position of trust to engage in sexual activity with [JR] as part of what you alluded to be part of her therapy. Further, during this same period of time, you continued treatment of her husband, [GR], using your professional position and position of trust to cover up your sexual activity with [JR].

Similarly, the August 5, 2016 notice provided, in relevant part:

> [A]dditional claims are being investigated concerning the use of illegal substances and abuse of prescribed substances[,] and that Dr. Cerwonka has potentially engaged in the practice of psychology while under the influence of illegal substances and/or misuse of prescribed substances.
> ***
> Additionally, in the deposition of [JR], [she] attests that she and Dr. Cerwonka discussed terminating therapy in order to continue a personal/sexual relationship. Upon information and belief, an official termination of therapy never occurred.

Both notices referenced the particular sections of the statutes, rules, or ethical standards that may be involved. See La. R.S. 49:955(B)(3); LAC

46:LXIII.1505(A)(3). The January 25, 2016 notice to Dr. Cerwonka provided, in relevant part:

> These allegations indicate a potential violation of Title 37, Chapter 28 (Psychologists), specifically RS 37:2359A, B(2)(b), B(2)(c), (5), (12), (13), and (14) and the following specific APA Ethical Principals [*sic*] of Psychologists ... adopted under Chapter 13 of the Louisiana Administrative Code, Title 46 Part LXIII: 2.06. Personal Problems and Conflicts, 3.04. Avoiding Harm, 3.06. Conflict of Interest, 3.08. Exploitative Relationships, 10.05. Sexual Intimacies with Current Therapy Clients/Patients, 10.06. Sexual Intimacies With Relatives or Significant Others of Current Therapy Clients/Patients, and 10.10. Terminating Therapy.

Similarly, the August 5, 2016 notice provided, in relevant part:

> The foregoing allegations indicate a potential violation of Title 37, Chapter 28 (Psychologists), specifically RS 37:2359A, B(2)(c), (12), (13), and (14) and the following specific APA Ethical Principals [*sic*] of Psychologists and Code of Conduct (2000) adopted under Chapter 13 of the Louisiana Administrative Code, Title 46, Part LXIII: 2.06 Personal Problems and Conflicts, 3.04 Avoiding Harm.
>
> ***
>
> However, in the event Dr. Cerwonka is able to provide such documentation, the following specific APA Ethical Principal [*sic*] would apply and should be specifically addressed in responding to the additional charges herewith: 10.08(a) and (b) Sexual Intimacies With Former Therapy Clients/Patients. 3.05(a)(2) Multiple Relationships is also being investigated as a potential violation.

The LSBEP enclosed copies of the applicable laws, administrative rules, and policies, including the APA's Ethical Standards, with the initial January 25, 2016 notice. The notice stated, "[a] copy of the relevant statutes, rules, or ethical standards are attached hereto for your review." See LAC 46:LXIII.1505(A)(4).

Both notices requested Dr. Cerwonka's cooperation in obtaining a full understanding of the circumstances. See LAC 46:LXIII.1505(A)(5). The January 25, 2016 notice to Dr. Cerwonka provided, in relevant part:

> It has been determined that this matter warrants further investigation. Therefore, in accordance with the LAC,

14

Title 46 Part LXIII. Section 1505, you are required to submit a written statement giving your view of the circumstances which are the subject of this complaint within **thirty (30) days** of receipt of this letter. In your statement please address the specific allegations above, providing any documentation relevant to support your statement.

Upon receipt of your response, it will be forwarded to [the LSBEP Complaints Chair] and possibly the [LSBEP's] legal counsel for further review and determination of whether a full investigation is warranted.

Your cooperation in obtaining a full understanding of the circumstances is requested.

Similarly, the August 5, 2016 notice provided, in relevant part:

In accordance with the LAC, Title 46, Part LXIII. Section 1505, you are being afforded the opportunity to submit a written statement giving your view of the circumstances[,] which are the subject of these new allegations within **thirty (30) days** of receipt of this letter. In your statement[,] please address the specific allegations above, providing any documentation relevant to support your statement.

Given the seriousness of these allegations, a face to face meeting has been scheduled to offer your client an opportunity to meet with representatives of the [LSBEP] ... on **Tuesday, September 6, 2016 at 9:30 AM**. The purpose of this meeting is to allow us to discuss the above-captioned matter, including your client's version of the pertinent events in question and noticed herewith and in our original notice dated January 25, 2016, our outstanding concerns, and a possible resolution of this matter without the necessity of a formal hearing.

\*\*\*

Please also be advised that, should your client reject the opportunity to participate in this meeting, as evidenced by their signature herewith, [LSBEP] representatives will proceed by filing an Administrative Complaint and request a hearing with the [LSBEP]. Thereafter, you shall receive notification from the LSBEP staff as to the date and time of the formal hearing and additional particulars regarding the hearing process.

Your client's continued cooperation in this matter is appreciated.

Based on the foregoing, the alleged violations charged by the LSBEP in the notices of the complaint complied with the governing statutes, administrative rules, and the LSBEP's policies and procedures.

### b. Administrative Complaint

Once the LSBEP initiated formal disciplinary proceedings against Dr. Cerwonka, it filed formal charges in an administrative complaint and set the matter for a formal disciplinary hearing. Louisiana Revised Statutes 49:955 provides, in pertinent part:

> A. In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice.
>
> B. The notice shall include:
>
> (1) A statement of the time, place, and nature of the hearing;
>
> (2) A statement of the legal authority and jurisdiction under which the hearing is to be held;
>
> ***
>
> If the agency or other party is **unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished.**

(Emphasis added.) As stated in LAC 46:LXIII.1511(B), "[t]he formal hearing shall be conducted in accordance with the adjudication procedures set forth in the Louisiana Administrative Procedure Act (R.S. 49:950 et seq.)."

Section 7003(C)(2) of the LSBEP's POLICY & PROCEDURES MANUAL provides that, "[t]he Respondent is noticed by the Investigator, via certified mail, regarding assignment of the complaint for formal investigation[,] and the steps that will be taken to facilitate the investigation." Section 7003(C)(3) states, in pertinent part, "[a]fter all the facts have been reviewed, the Investigator will classify the complaint" into one of three categories, one of which is "Clear Violation." Section 7003(C)(3)(c) provides, in relevant part:

16

> If the violation represents behavior which warrants revocation, suspension, restriction, or any other formal limitations of license[,] the Complaints Coordinator will:
>
> i. Draft an *Administrative Complaint* to include facts and charges and *Request for Formal Hearing* to be submitted to the [LSBEP] Prosecutor for review. Prior to filing the *Administrative Complaint* and *Request for Formal Hearing* with the [LSBEP], the [Respondent] should be provided with a copy of the draft *Administrative Complaint* and *Request for Formal Hearing* along with offer for a face to face informal hearing to show compliance with all lawful requirements for the retention of license.

The LSBEP sent the administrative complaint to Dr. Cerwonka via certified mail and included a statement of the time, place, and nature of the hearing via a notice of formal hearing. See La. R.S. 49:955(B)(1); Section 7003(C)(2) of the LSBEP's POLICY & PROCEDURES MANUAL. The administrative complaint also included a statement of the LSBEP's legal authority and jurisdiction under which the hearing was to be held. See La. R.S. 49:955(B).

The administrative complaint contained a definite and detailed statement of facts and set forth four alleged violations, including references to the particular sections of the statutes, rules, and ethical standards that were potentially violated. See La. R.S. 49:955(B). The "Facts" portion of the administrative complaint contained details regarding the charges brought against Dr. Cerwonka, including the following:

> On or about May of 2015, **JR** disclosed to **CERWONKA** that she had developed feelings for him. After this disclosure, **JR** and **CERWONKA** began texting each other inappropriate/sexually explicit messages in June 2015; during that same period[,] **JR** began to come in for unscheduled visits with **CERWONKA**. In July, 2015, one month after **GR's** final visit with **CERWONKA, CERWONKA** and **JR** kissed in his office during a therapy session. At the end of July 2015, **CERWONKA** and **JR** discussed stopping therapy in order that **JR** could go to work for him. **JR** states that there was never a formal termination of therapy and that therapy continued throughout their

17

relationship, which is evidenced by their communication during that period of time.

***

**JR** began working with **CERWONKA** as an employee in July 2015. **JR** and her husband, **GR**, were separated at this time. **JR** worked part-time for **CERWONKA**, conducting psychological testing from July 2015 until August 18, 2015[,] and was paid from **CERWONKA's** personal checking account. During this period, **CERWONKA** and **JR** had oral sex, intercourse[,] and/or sexual intimacies on at least three occasions. In her sworn deposition of February 26, 2016, and a report she made to the Lafayette Police Department on October 12, 2015 at 11:29 a.m., the first sexual encounter was not consensual. **JR** states she waited to report the incident out of fear that **CERWONKA** would not testify in her favor if her estranged husband, **GR**, filed for custody of their children. In his response to the initial notice of this matter, **CERWONKA** acknowledged that he had employed **JR**.

***

In **JR's** sworn deposition of February 26, 2016, **JR** stated that **CERWONKA** advised her that her husband, **GR**, was a "narcissist" and not capable of providing the love that she should have[.] **CERWONKA** inquired as to whether **JR** wanted to continue in her relationship with her husband and provided **JR** with the name of an attorney that he had used for a civil matter, and advice on how to proceed with a divorce, including what parish she should live in.

The administrative complaint alleged the following violations:

1.  **CERWONKA** knew or should have known that he had inappropriate feelings for **JR**, and despite knowing of these feelings and despite knowing that there are proper means with which a person in his profession can manage these feelings, he failed to do so in violation of [La. R.S. 37:2359(A), (B)(2)(c), (B)(12), (B)(13), (B)(14), as well as Ethical Standards 2.06 Personal Problems and Conflicts, 3.04 Avoiding Harm, 3.05(a)(2) and (a)(3) Multiple Relationships, 3.06 Conflict of Interest, 3.08 Exploitative Relationships, 7.07 Sexual Relationships With Students and Supervisees, 10.05 Sexual Intimacies With Current Therapy Clients/Patients, 10.06 Sexual Intimacies with Relatives or Significant Others of Current Therapy Clients/Patients, 10.08(a) and (b) Sexual Intimacies with Former Therapy Clients/Patients, and 10.10(a) and (c) Terminating Therapy, found in the APA's Ethical Principles of Psychologists and Code of Conduct, as adopted under the LAC].

18

2. **CERWONKA** used his professional position and position of trust to engage in an inappropriate relationship and in sexual activity with **JR** in violation of [La. R.S. 37:2359(A), (B)(2)(c), (B)(12), (B)(13), (B)(14), as well as Ethical Standards 2.06 Personal Problems and Conflicts, 3.04 Avoiding Harm, 3.05(a)(2) and (a)(3) Multiple Relationships, 3.06 Conflict of Interest, 3.08 Exploitative Relationships, 7.07 Sexual Relationships With Students and Supervisees, 10.05 Sexual Intimacies With Current Therapy Clients/Patients, 10.06 Sexual Intimacies with Relatives or Significant Others of Current Therapy Clients/Patients, 10.08(a) and (b) Sexual Intimacies with Former Therapy Clients/Patients, and 10.10(a) and (c) Terminating Therapy, found in the APA's ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT, as adopted under the LAC].

3. **CERWONKA** used his professional position and position of trust to cover up his sexual activity with **JR**, including paying her to perform psychological services in his private practice in violation of [La. R.S. 37:2359(A), (B)(2)(c), (B)(12), (B)(13), (B)(14), as well as Ethical Standards 2.06 Personal Problems and Conflicts, 3.04 Avoiding Harm, 3.05(a)(2) and (a)(3) Multiple Relationships, 3.06 Conflict of Interest, 3.08 Exploitative Relationships, 7.07 Sexual Relationships With Students and Supervisees, 10.05 Sexual Intimacies With Current Therapy Clients/Patients, 10.06 Sexual Intimacies with Relatives or Significant Others of Current Therapy Clients/Patients, 10.08(a) and (b) Sexual Intimacies with Former Therapy Clients/Patients, and 10.10(a) and (c) Terminating Therapy, found in the APA's ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT, as adopted under the LAC].

4. **CERWONKA** engaged in the abuse of prescribed substances/medication and/or illegal substances endangering the health and welfare of his clients in violation of [La. R.S. 37:2359(A), (B)(2)(c), (B)(12), (B)(13), (B)(14), as well as Ethical Standards 2.06 Personal Problems and Conflicts and 3.04 Avoiding Harm, found in the APA's ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT, as adopted under the LAC].

Based on the foregoing, it is clear that the LSBEP's administrative complaint, No. P15-16-03C, complied with all of the above-stated requirements.

19

### c. Conclusion

Our *de novo* review of the record—including the January 25, 2016 and August 5, 2016 notices, as well as the September 27, 2016 administrative complaint—shows that the LSBEP complied with all of the requirements for notices and administrative complaints contained in the Act, the statutes, the administrative code, and the LSBEP's policies and procedures. The notices contained the required "short and plain statement of the nature of the complaint" and included references to the applicable statutes, rules, and ethical provisions. The administrative complaint also complied with the applicable law and contained sufficiently detailed factual allegations to apprise Dr. Cerwonka of the charges levied against him in alleged violation of his license. Therefore, we find that there is no merit to Dr. Cerwonka's contention that he was deprived of the opportunity to respond, investigate, or defend against the LSBEP's allegations against him based on lack of specificity or detail.

### 2. Summary Suspension of Dr. Cerwonka's Psychology License

Dr. Cerwonka argues that the LSBEP's summary suspension of his license violated his due process rights because the suspension was issued "on the whim" of the LSBEP Complaints Coordinator—who he described as an "administrative clerical employee"—without a full hearing before the LSBEP with the opportunity for him to examine the LSBEP's evidence.

### a. Notice and Opportunity to Examine Evidence

During its investigation, the LSBEP communicated with Dr. Cerwonka in an effort to seek a resolution of the complaint through an informal **Bertucci** meeting.[19] See La. R.S. 49:961(C); LAC 46:LXIII.1511(A). When the issue is one of suspension, revocation, annulment, or withdrawal of an existing license, a licensee is given the opportunity to show compliance with the requirements for the

---

[19] See n.3, *supra.*

retention of a license and that the actions complained of do not violate law or agency rules prior to the institution of formal adjudicatory proceedings. See La. R.S. 49:961(C); LAC 46:LXIII.1511(A); **Bertucci**, 593 So. 2d at 801. This is commonly known as a "**Bertucci** meeting," or a "961(C) meeting."

The Act, administrative rules, LSBEP policies, and corresponding jurisprudence do not provide much guidance as to what satisfies the requirements of a **Bertucci** meeting. The Fourth Circuit has indicated that a licensing agency has discretion as to the manner of the meeting, indicating that an "informal setting" in which a licensee would be allowed to explain himself face-to-face satisfies the requirements of **Bertucci**, and that the licensee is not entitled to dictate to an agency in that regard. **Reaux v. Louisiana Bd. of Med. Examiners**, 2002-0906 (La. App. 4th Cir. 5/21/03), 850 So. 2d 723, 731, writ denied, 2003-2546 (La. 11/26/03), 860 So. 2d 1138. The Fourth Circuit has also held that a licensee under investigation is not entitled to have a record preserved of a **Bertucci** meeting. **Reaux**, 850 So. 2d at 731.

Thus, there is no record or transcript preserved of the October 26, 2016 **Bertucci** meeting; however, the record shows that Dr. Cerwonka and his then-attorney of record, J. Arthur Smith, III, were in attendance, as well as LSBEP board member and Complaints Coordinator, Dr. Sasha J. Lambert; LSBEP Executive Director, Jaime T. Monic; LSBEP Prosecutor, James R. "Jim" Raines; and LSBEP Investigator, Ronald Robinson. On appeal, the LSBEP indicates that Prosecutor Raines shared portions of the results of the LSBEP's investigation with Dr. Cerwonka and Mr. Smith. The record indicates that neither Mr. Smith nor Dr. Cerwonka presented any evidence or testimony in Dr. Cerwonka's defense at the informal meeting to show his compliance with the requirements for the retention of his license, nor that his complained of actions did not violate the law or the LSBEP's rules and ethical standards. Mr. Smith indicated to those present that Dr.

21

Cerwonka wanted to present his case at a full trial on the merits of the administrative complaint.

Although Dr. Cerwonka argues that he was "entitled to see evidence that would be presented" at the **Bertucci** meeting, there is no such requirement contained in La. R.S. 49:961(C), LAC 46:LXIII.1511(A), or **Bertucci** and its progeny. The purpose of the October 26, 2016 meeting was not disciplinary or adjudicatory; it was merely an informal opportunity for Dr. Cerwonka to show compliance with his license requirements and that his complained of actions did not violate any law or LSBEP rule or ethical standard prior to formal administrative complaint proceedings. Accordingly, we find no merit to Dr. Cerwonka's claim that his due process rights were violated at the **Bertucci** meeting with regards to notice and opportunity to examine evidence.

### b. Complaints Coordinator's Authority to Issue Summary Suspension of License

Following the **Bertucci** meeting, the Complaints Coordinator provided Dr. Cerwonka with written notice via certified mail on October 26, 2016, indicating that his license was summarily suspended in an emergency action to safeguard the health, safety, and welfare of the public. Then, the LSBEP accordingly instituted the adjudicatory phase of the administrative complaint process by scheduling a formal disciplinary hearing. See La. R.S. 37:2353(C)(5); La. R.S. 37:2359(B) and (C); LAC 46:LXIII.1511(A).

Prior to the institution of formal disciplinary proceedings regarding an administrative complaint, the Act authorizes licensing agencies to issue summary suspensions of professional licenses in certain instances. As provided for in La. R.S. 49:961(C):

> No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which warrant the

22

intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license. **If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action.** These proceedings shall be promptly instituted and determined.

(Emphasis added.)

Under LAC 46:LXIII.1501(C), "the [LSBEP] may delegate its authority and responsibility under these rules to a committee of one or more [LSBEP] members, to a hearing officer, or to other persons," including a Complaints Coordinator. Additionally, Section 7003(C)(4) of the LSBEP's POLICY & PROCEDURES MANUAL provides, in pertinent part:

> If at any point during an investigation, it is determined that the health, safety and welfare of the public is at risk, the Complaints Coordinator in coordination with the Prosecuting Attorney may summarily suspend a license or take any other action required for the protection of the public.

The statutes, rules, and LSBEP policies and procedures clearly show that the LSBEP has the power to delegate its authority as it deems appropriate. See LAC 46:LXIII.1501(C). In this case, the LSBEP delegated to the Complaints Coordinator, LSBEP board member Dr. Sasha J. Lambert, the authority to issue a summary suspension in this instance if she determined that such a suspension was necessary to protect the public health, safety, or welfare. The record demonstrates that at the time of his summary suspension, the LSBEP was investigating credible claims of Dr. Cerwonka's alleged use of illegal substances, abuse of prescribed substances, engaging in the practice of psychology while under the influence of said substances, and mismanagement of his professional relationship with patients. In her sworn deposition, Complaints Coordinator Lambert testified:

> Given the seriousness of the complaint and given the evidence that I have seen that you [Mr. Smith, Dr.

Cerwonka's attorney,] have also seen, I was concerned that it might potentially represent a threat to the safety of others for him to continue practicing.

\*\*\*

Given the information contained in the file, I believe there was the possibility of a threat to the safety of others should he continue practicing. As he did not provide any information in the face-to-face meeting that we had on the 26th, I was not convinced that there was no possibility of a threat to others.

Based on the governing law, rules, and LSBEP policies and procedures, in addition to the evidence and testimony in the record, we cannot say that the Complaints Coordinator exceeded her statutory or administrative authority in issuing the summary suspension of Dr. Cerwonka's psychology license on October 26, 2016. Thus, we find no merit to Dr. Cerwonka's contention that the LSBEP's summary suspension of his license to practice psychology in the State of Louisiana violated his right to due process.

### c. Conclusion

For the reasons discussed, there is no merit to Dr. Cerwonka's claim that his due process rights were violated at the **Bertucci** meeting with regards to notice and opportunity to examine evidence prior to the summary suspension of his license. Likewise, there is no merit to Dr. Cerwonka's claim that the Complaints Coordinator exceeded the LSBEP's authority when she summarily suspended his license following the October 26, 2016 **Bertucci** meeting.

### 3. Scope of the LSBEP's Opinion and Order

Dr. Cerwonka further argues that he was found "guilty of matters for which he was never charged, another clear violation of due process."

The January 25, 2016 notice indicated that Dr. Cerwonka had potentially violated La. R.S. 37:2359(A), (B)(2)(b), (B)(5), (B)(12), (B)(13), (B)(14), as well as APA Ethical Standards 2.06 Personal Problems and Conflicts (LAC 46:LXIII.1305(F)); 3.04 Avoiding Harm (LAC 46:LXIII.1307(D)); 3.06 Conflict

24

of Interest (LAC 46:LXIII.1307(F)); 3.08 Exploitative Relationships (LAC 46:LXIII.1307(H)); 10.05 Sexual Intimacies With Current Therapy Clients/Patients (LAC 46:LXIII.1321(E)); 10.06 Sexual Intimacies with Relatives or Significant Others of Current Therapy Clients/Patients (LAC 46:LXIII.1321(F)); and 10.10(a) and (c) Terminating Therapy (LAC 46:LXIII.1321(J)(1) and (3)).

The August 5, 2016 notice indicated that Dr. Cerwonka had potentially violated La. R.S. 37:2359(A), (B)(2)(c), (B)(12), (B)(13), (B)(14), as well as APA Ethical Standards 3.04 Avoiding Harm (LAC 46:LXIII.1307(D)); 3.05(a)(2) Multiple Relationships (LAC 46:LXIII.1307(E)(1)(b)); and 10.08(a) and (b) Sexual Intimacies with Former Therapy Clients/Patients (LAC 46:LXIII.1321(H)(1) and (2)).

The LSBEP's September 27, 2016 formal administrative complaint against Dr. Cerwonka, No. P15-16-03C, alleged violations of: La. R.S. 37:2359(A), (B)(2)(c), (B)(12), (B)(13), (B)(14), as well as APA Ethical Standards 2.06 Personal Problems and Conflicts (LAC 46:LXIII.1305(F)); 3.04 Avoiding Harm (LAC 46:LXIII.1307(D)); 3.05(a)(2) and (a)(3) Multiple Relationships (LAC 46:LXIII.1307(E)(1)(b) and (c)); 3.06 Conflict of Interest (LAC 46:LXIII.1307(F)); 3.08 Exploitative Relationships (LAC 46:LXIII.1307(H)); 7.07 Sexual Relationships With Students and Supervisees (LAC 46:LXIII.1315(G)); 10.05 Sexual Intimacies With Current Therapy Clients/Patients (LAC 46:LXIII.1321(E)); 10.06 Sexual Intimacies with Relatives or Significant Others of Current Therapy Clients/Patients (LAC 46:LXIII.1321(F)); 10.08(a) and (b) Sexual Intimacies with Former Therapy Clients/Patients (LAC 46:LXIII.1321(H)(1) and (2)); and 10.10(a) and (c) Terminating Therapy (LAC 46:LXIII.1321(J)(1) and (3)).

Following the formal administrative hearing held on January 12 and 13, 2017, the LSBEP ruled in its February 10, 2017 opinion and order that Dr.

Cerwonka's actions had violated La. R.S. 37:2359(A), (B)(2)[c],[20] (B)(5), (B)(12), (B)(13), and (B)(14), as well as APA Ethical Standards 2.06 Personal Problems and Conflicts (LAC 46:LXIII.1305(F)); 3.04 Avoiding Harm (LAC 46:LXIII.1307(D)); 3.08 Exploitative Relationships (LAC 46:LXIII.1307(H)); 10.05 Sexual Intimacies With Current Therapy Clients/Patients (LAC 46:LXIII.1321(E)); 10.06 Sexual Intimacies with Relatives or Significant Others of Current Therapy Clients/Patients (LAC 46:LXIII.1321(F)); and 10.10 Terminating Therapy (LAC 46:LXIII.1321(J)).

The record clearly shows that Dr. Cerwonka was not found "guilty of matters" for which he was never charged. The LSBEP's February 10, 2017 opinion and order found merit to the allegations that Dr. Cerwonka had violated certain statutes, rules, and ethical standards, which had all been alleged in the notices and charged in the administrative complaint. Accordingly, we find no merit to this argument.

### 4. Conclusion

As discussed, *supra*, the LSBEP complied with all of the statutory laws, administrative rules, and LSBEP policies and procedures regarding the notices of complaint and the formal administrative complaint against Dr. Cerwonka. See La. R.S. 49:964(G)(3). None of Dr. Cerwonka's due process rights were violated before or during the **Bertucci** meeting on October 26, 2016, with regards to notice and opportunity to examine evidence. See La. R.S. 49:964(G)(1). Furthermore, the Complaints Coordinator did not exceed the statutory authority of the LSBEP in summarily suspending Dr. Cerwonka's license. The record shows that her decision was not in excess of the statutory authority of the LSBEP, nor was the decision arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion. See La. R.S. 49:964(G)(2) and (5). Finally,

---

[20] Based on Section E of the opinion and order that is titled, "Conclusions of Law," it appears that "(b)" is a clerical typographical error and should be "(c)."

the record shows that Dr. Cerwonka's license was revoked for violations of statutory law, administrative rules, and ethical standards that were alleged and charged in the notices of complaint and the formal administrative complaint. The LSBEP's revocation of Dr. Cerwonka's license based on these violations could therefore not be arbitrary or capricious. See La. R.S. 49:964(G)(5).

Based on the foregoing, we hold that Dr. Cerwonka has not shown that the LSBEP's opinion and order was in violation of constitutional or statutory provisions, in excess of the statutory authority of the LSBEP, made upon unlawful procedure, affected by other error of law, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. See La. R.S. 49:964(G)(1)-(5).

### B.  The LSBEP's February 10, 2017 Opinion and Order

Dr. Cerwonka argues that there was no "legally sufficient evidence" before the LSBEP to mandate the revocation of his license to practice psychology in the State of Louisiana.

The record on appeal includes the entire administrative record, which comprises all the documentary and electronic evidence submitted by Dr. Cerwonka and the LSBEP.  The administrative record is over two thousand pages of documents, including (but not limited to):  official and unofficial written and electronic correspondence; police reports; legal judgments; medical records and patient files; Dr. Cerwonka's license application with the LSBEP, including criminal background reports; employee personnel files from Dr. Cerwonka's former employer, the Veterans' Administration; depositions and affidavits of various witnesses, including the complainants and former employees of Dr. Cerwonka; discovery responses; copies of phone logs and text messages; copies of photographs; and various expert reports.

In its opinion and order, the LSBEP laid out the procedural timeline leading up to the filing of the administrative complaint; the applicable statutes, administrative rules, LSBEP policies and procedures, and ethical standards; made extensive findings of fact; made conclusions of law; issued a ruling; and issued its order and decree, revoking Dr. Cerwonka's license to practice psychology in the State of Louisiana. We attach the LSBEP's February 10, 2017 opinion and order as **EXHIBIT A** to this opinion for reference.

Based on our extensive *de novo* review of the record, we hold that the LSBEP's February 10, 2017 opinion and order is supported and sustained by a preponderance of the evidence. See La. R.S. 49:964(G)(6).

## DECREE

Accordingly, we affirm the district court's February 19, 2019 judgment on judicial review, which denied Eric R. Cerwonka's petition for review and affirmed the opinion and order of the Louisiana State Board of Examiners of Psychologists, dated February 10, 2017.

**AFFIRMED.**

# EXHIBIT A

IN RE:                                           DOCKET NO: P15-16-03C

ERIC R. CERWONKA, PSY.D.                         LOUISIANA STATE BOARD OF
                                                 EXAMINERS OF PSYCHOLOGISTS

---

## OPINION AND ORDER

This matter came before the Louisiana State Board of Examiners of Psychologists ("the Board" or "LSBEP") for hearing on January 12-13, 2017, pursuant to written notice, at which time a quorum of the Board was present:

Appearances:

Eric R. Cerwonka, Psy.D.;

James Brazee, Jr. and Evan Edwards, counsel for respondent Eric Cerwonka, Psy.D.;

James Raines, complaint counsel for the Board;

Darla M.R. Burnett, Ph.D.; M.P., Board Member;

Amy Henke, Psy.D., Board Member;

Phillip Griffin, Ph.D., Board Member;

Koren Boggs, Ph.D., Board Member

Jesse Lambert, Psy.D., Board Member;

Amy Groves Lowe, counsel for the Board.

## A.    JURISDICTION

Jurisdiction for the hearing is vested pursuant to La. R.S. 37:2359.

## B.    BACKGROUND AND MATTERS AT ISSUE

Proceedings to adjudicate an administrative enforcement action were initiated by the filing of an Administrative Complaint on January 25, 2016: No. P15-16-03C. The Administrative Complaint was signed by the LSBEP Executive Director, Jaime Monic, and set forth a concise statement of the material facts and matters alleged to be violations of Board rules and regulations. On August 5, 2016, supplemental notice was sent to Cerwonka through his counsel of record setting forth an additional concise statement of the material facts and matters alleged to be violations of Board rules and regulations. Cerwonka did not dispute any legal or factual issues related to notification of the allegations against him or to his response thereto.

The issues for the Board to determine in this matter were whether the Respondent's actions constitute cause for which the Board may order suspension or revocation of the Respondent's license or a lesser sanction as deemed appropriate and whether the Respondent's actions were in violation of the following provisions:

(a)    La. R.S. 37:2359(A) Engaging in conduct not in conformity with ethical and profession standards promulgated by the board;

(b)    La. R.S. 37:2359(B) Power of the board to suspend, place on probation, require remediation, revoke license, or take any other action specified in the rules and regulations;

(c)    La. R.S. 37:2359(B)(2)(b) Engaging in sexual intercourse or contact with a client or patient;

(d) La. R.S. 37:2359(B)(2)(c) Engaging in gross malpractice, repeated malpractice, or gross negligence in the practice of psychology;

(e) La. R.S. 37:2359(B)(5) Use of untruthful, deceptive or improbable statements concerning licensee's qualifications;

(f) La. R.S. 37:2359(B)(12) Violation of code of ethics;

(g) La. R.S. 37:2359(B)(13) Inability to practice psychology by reason of illness, inebriation, misuse of drugs, or any other substance, or as a result of any mental or physical condition;

(h) La. R.S. 37:2359(B)(14) Violation of any of the rules and regulations of the board,

(i) APA Ethical Principles and Code of Conduct Standard 2.06 Personal Problems and Conflicts;

(j) APA Ethical Principles and Code of Conduct Standard 3.04 Avoiding Harm;

(k) APA Ethical Principles and Code of Conduct Standard 3.05 Multiple Relationships;

(l) APA Ethical Principles and Code of Conduct Standard 3.08 Exploitative Relationships;

(m) APA Ethical Principles and Code of Conduct Standard 10.05 Sexual Intimacies with Current Therapy Clients/Patients;

(n) APA Ethical Principles and Code of Conduct Standard 10.06 Sexual Intimacies with Relatives or Significant Others of Current Therapy Clients/Patients;

(o) APA Ethical Principles and Code of Conduct Standard 10.08 Sexual Intimacies with Former Therapy Clients/Patients

(p) APA Ethical Principles and Code of Conduct Standard 10.10 Terminating Therapy.

## C.  APPLICABLE STATUTES AND RULES AND REGULATIONS

The laws governing psychologists can be found at La. R.S. 37:2359. Specific consideration was given by the Board to the following statutes, rules and regulations:

**La. R.S. 37:2359 Denial, revocation or suspension of license:**

A.   A psychologist and anyone under the supervision of a psychologist shall conduct their activities in conformity with ethical and professional standards promulgated by the board under its current rules and regulations.

B.   The board shall have the power and duty to suspend, place on probation, require remediation for a specified time, revoke any license to practice psychology, or take any other action specified in the rules and regulations whenever the board, by affirmative vote of at least four of its five members, shall find by a preponderance of the evidence that a psychologist has engaged in any of the following acts or offences:

(2)   Practicing psychology in such a manner as to endanger the welfare of clients or patients, including but not limited to:

(b) Engaging in sexual intercourse or other sexual contact with a client or patient

(c) Gross malpractice, repeated malpractice, or gross negligence in the practice of psychology.

(5)   Use of repeated untruthful, deceptive or improbable statements concerning the licensee's qualifications or the effects or results of proposed treatment, including functioning outside of one's professional competence established by education, training, and experience.

(12)   Violation of the code of ethics adopted in the rules and regulations of the board or other immoral, unprofessional or dishonorable conduct as defined in the rules and regulations of the board.

(13) Inability to practice psychology with reasonable skill and safety to patients or clients by reason of illness, inebriation, misuse of drugs, narcotics, alcohol, chemicals, or any other substance, or as a result of any mental or physical condition.

(14) Violation of any of the provisions of this Chapter or of the rules and regulations promulgated by the board thereunder.

C. Proceedings for disciplinary action or for the denial or withholding of a license under the authority of this Section shall be conducted in compliance with the Louisiana Administrative Procedure Act, R.S. 49:950 et seq. The board may require a person against whom disciplinary action has been taken by the board after hearing to pay reasonable costs of the proceedings incurred by the board for hearing and any judicial review, including attorney, stenographer and witness fees. These costs shall be paid no later than thirty days after the adjudication by the board becomes final. No license shall be issued, reinstated or renewed until such costs have been paid.

**American Psychological Association Ethical Principles of Psychologists and Code of Conduct:**

### 2.06 Personal Problems and Conflicts

(a) Psychologists refrain from initiating an activity when they know or should know that there is a substantial likelihood that their personal problems will prevent them from performing their work-related activities in a competent manner.

(b) When psychologists become aware of personal problems that may interfere with their performing work-related duties adequately, they take appropriate measures, such as obtaining professional consultation or assistance, and determine whether they should limit their work-related duties.

### 3.04 Avoiding Harm

Psychologists take reasonable steps to avoid harming their clients/patients, students, supervisees, research participants, organizational clients and others with whom they work, and to minimize harm where it is foreseeable and unavoidable.

### 3.05 Multiple Relationships

(a) A multiple relationship occurs when a psychologist is in a professional role with a person and (2) at the same time is in a relationship with a person closely associated with or related to the person with whom the psychologist has the professional relationship. A psychologist refrains from entering into a multiple relationship if the multiple relationship could reasonably be expected to impair the psychologist's objectivity, competence or effectiveness in performing his or her functions as a psychologist, or otherwise risks exploitation or harm to the person with whom the professional relationship exists.

### 3.08 Exploitative Relationships

Psychologists do not exploit persons over whom they have supervisory, evaluative, or other authority such as clients/patients, students, supervisees, research participants, and employees.

### 10.05 Sexual Intimacies with Current Therapy Clients/Patients

Psychologists do not engage in sexual intimacies with current therapy clients/patients.

### 10.06 Sexual Intimacies with Relatives or Significant Others of Current Therapy Clients/Patients

Psychologists do not engage in sexual intimacies with individuals they know to be close relatives, guardians or significant others of current clients/patients. Psychologists do not terminate therapy to circumvent this standard.

### 10.08 Sexual Intimacies with Former Therapy Clients/Patients

(a)  Psychologists do not engage in sexual intimacies with former clients/patients for at least two years after cessation or termination of therapy.

(b)  Psychologists do not engage in sexual intimacies with former clients/patients even after a two-year interval except in the most unusual circumstances. Psychologists who engage in such activity after the two years following cessation or termination of therapy and of having no sexual contact with the former client/patient bear the burden of demonstrating that there has been no exploitation, in light of all relevant factors, including (1) the amount of time that has passed since therapy terminated; (2) the nature, duration and intensity of the therapy; (3) the circumstances of termination; (4) the client's/patient's personal history; (5) the client's/patient's current mental status; (6) the likelihood of adverse impact on the client/patient; (7) any statements or actions made by the therapist during the course of therapy suggesting or inviting the possibility of a posttermination sexual or romantic relationship with the client/patient.

### 10.10 Terminating Therapy

(a)  Psychologists terminate therapy when it becomes reasonably clear that the client/patient no longer needs the service, is not likely to benefit or is being harmed by continued service.

(c)  Except where precluded by the actions of clients/patients or third-party payors, prior to termination psychologists provide pretermination counseling and suggest alternative service providers as appropriate.

### D.  FINDINGS OF FACT

Dr. Cerwonka was granted licensure by the Board on October 20, 2006. Cerwonka has worked as a psychologist at the Veterans Administration ("VA") since 2004 and has maintained a private practice in Lafayette, Louisiana. He also has a business agreement with the Social Security Administration to provide evaluations of social security disability applicants.

Cerwonka testified that he met Annetra Hebert in 2009 when she attended therapy sessions at the VA with her significant other. Cerwonka further testified that he met with Annetra Hebert individually after these sessions. (Prosecution Exhibit 3, or P-Ex. 3). Dr. Cerwonka testified that he was in a relationship with Ms. Hebert possibly as early as 2009 and cohabitated with her from 2010 to 2015. (see also P-Ex. 3). While engaged in a relationship with Ms. Hebert, Cerwonka hired her to work at his private practice office. (P-Ex. 3). Ms. Hebert continued to work for Cerwonka until 2015. (P-Ex. 10).

Dr. Cerwonka testified that he treated Jennifer Rogers as a patient from April, 2014, through July 13, 2015. (P-Ex. 11, 14). Cerwonka diagnosed Ms. Rogers with Major Depressive Disorder, Recurrent, Moderate and Attention Deficit Hyperactivity Disorder, Inattentive Type. (P-Ex. 12). Ms. Rogers was also seeking therapy from Cerwonka for marital problems. Cerwonka also treated Grant Rogers, Jennifer Rogers' husband, individually and as part of couples' therapy from July, 2014 through June, 2015. (P-Ex. 14 and 15). Ms. Rogers testified that she and Cerwonka began a sexual relationship while she was his patient. Dr. Cerwonka denied having a sexual relationship with Ms. Rogers but did admit that he was aware that Ms. Rogers developed romantic feelings for him during the last month of their therapeutic relationship. Dr. Cerwonka stated that he believed Ms. Rogers, during this last month of therapy, was delusional and had self-esteem problems, noting her history of a suicide attempt. (Defense Exhibit 13, or D-Ex. 13).

Cerwonka admitted he employed Jennifer Rogers to work at his home in July of 2015. (P-Ex. 3). Dr. Cerwonka admitted that he received pictures from Jennifer Rogers and that he forwarded those pictures to his email address. (P-Ex. 3, 16). Ms. Rogers testified that many of those pictures were pictures of her undressed. (P-Ex. 16). Dr. Cerwonka admitted that he communicated with Jennifer Rogers using the "WhatsApp" application on his cell phone. (P-Ex. 3). Ms. Rogers testified that the "WhatsApp" application was for the purpose of texting without being traceable.

Several text messages between Ms. Rogers and Cerwonka were introduced into evidence showing approximately 1800 messages from July 8, 2015 through July 14, 2015. (P-Ex. 18). These communications were taking place during the time that Jennifer Rogers was a patient of Cerwonka and during the time that she was working for Cerwonka. (See P-Ex. 14 showing the last date of treatment as July 13, 2015). Ms. Rogers testified that the text messages were sexual in nature and took place at very late hours of the night. Dr. Cerwonka disputed the nature of the texts but did not dispute the number of texts and the time of the texts. Dr. Cerwonka also admitted that texts were not copied or described in Ms. Rogers' patient file.

Dr. Christopher Garner testified as the treating psychologist of Cerwonka. He testified that such a volume of texts between a psychologist and patient should have been put in the patient's therapy notes.

Cerwonka also testified that he and Ms. Rogers went to dinner together at local restaurants and went to his home following dinner on at least one occasion in 2015.

Cerwonka testified that on October 31, 2016, his employer, the Department of Veteran Affairs, placed Cerwonka on Authorized Absence (paid leave status) pending the outcome of an Administrative Investigation Board (AIB) regarding allegations of misconduct. (P-Ex. 21).

Cerwonka testified that a judicial hearing in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, was held on December 7, 2016, (Docket No. 652936, Sec. D, *Eric R. Cerwonka v. Louisiana State Board of Examiners of Psychologists)*. In that hearing Judge Janice Clark ordered restrictions on Cerwonka's practice of psychology. Those restrictions included the following: (1) he could only perform Social Security evaluations and only during certain hours of the day and with another licensed psychologist present; (2) his practice must be monitored through weekly face-to-face supervisions with a Board-approved licensed psychologist; (3) he must undergo a substance abuse evaluation by a Board-approved clinician prior to performing any evaluations; and (4) he must submit to regular and random drug tests as directed by his supervisor or the Board-appointed clinician. (See also P-Ex. 29). Cerwonka testified that in response to this Order, he ceased seeing patients altogether.

Dr. Robert Gordon, a psychologist licensed in Pennsylvania, testified as an expert witness for Dr. Cerwonka. He testified that Cerwonka had problems with boundaries and mismanaged the issues of transference and countertransference with Ms. Rogers. Gordon testified that Ms. Rogers should have been treated carefully because she was not functioning at a high level in 2015. Gordon also testified that Cerwonka moved too quickly from therapist to mentor or supervisor. Gordon testified that Cerwonka should have been on guard that a patient will try to test boundaries which can result in harm to the patient if not properly managed by the psychologist.

Dr. Sasha Lambert, the Complaints Coordinator for the Board, testified that in her opinion Cerwonka violated the following standards of the APA Ethical Code of Conduct:

    (1)    2.06 – substance abuse and abuse while seeing clients;

    (2)    3.05(a)(2) and (a)(3) – Cerwonka hired a patient immediately after terminating the therapy relationship; supervised the patient immediately after terminating the therapy relationship; treated the patient's significant other; terminated therapy knowing the patient had maladaptive behavior and continued problems; the text messages did not appear therapeutic in

nature, and, if they were, they should have been described in the patient's file;

(3) 3.06 – Cerwonka's relationship with Ms. Rogers blurred the line between professional and romantic at best; Ms. Rogers should not have worked for Cerwonka so soon after her treatment ended;

(4) 3.08 – Cerwonka's relationship with Ms. Rogers blurred the line between professional and romantic at best; Ms. Rogers should not have worked for Cerwonka so soon after her treatment ended;

(5) 10.05 – Ms. Rogers testified that she and Cerwonka had a sexual relationship immediately after terminating therapy;

(6) 10.06 – Both Ms. Rogers and Ms. Hebert testified that they and Cerwonka had a sexual relationship while Cerwonka was treating their significant other or immediately thereafter;

(7) 10.08 – Ms. Rogers, a former patient, testified that she and Cerwonka had a sexual relationship immediately following the termination of therapy; the text messages in July, 2015 suggest a romantic relationship.

Dr. Lambert concluded that Cerwonka's primary motivation with regard to Ms. Rogers was not the clinical practice of psychology.

## E.  CONCLUSIONS OF LAW

Dr. Cerwonka violated La. R.S. 37:2359(A), which provides that psychologists "...*shall* conduct their activities in conformity with ethical and professional standards promulgated by the Board under its rules and regulations," by violating sections of La. R.S. 37:2359 and the APA Code of Ethical Conduct standards as set forth below.

Dr. Cerwonka violated La. R.S. 37:2359(B)(2)(c), which provides that it shall be a violation of psychologists to engage in "gross malpractice, repeated malpractice, or gross negligence in the practice of psychology." Dr. Cerwonka knew or should have known that Ms. Rogers had romantic feelings for him and failed to take appropriate action to manage those feelings. Dr. Cerwonka knew or should have known that Annetra Hebert was the girlfriend of his VA patient whom he was treating and should not have engaged in a sexual relationship with her during that treatment and immediately thereafter. Cerwonka should not have hired Ms. Rogers or Ms. Hebert immediately after terminating the therapy relationship; should not have supervised Ms. Rogers or Ms. Hebert immediately after terminating the therapy relationship; should not have treated Ms. Roger's significant other; should not have terminated therapy knowing Ms. Rogers had maladaptive behavior and continued problems; and should not have sent 1800 text messages to Ms. Rogers without documenting such in Ms. Roger's file.

Dr. Cerwonka violated La. R.S. 37:2359(B)(12), which provides that psychologists shall not engage in "immoral, unprofessional or dishonorable conduct as defined in the rules and regulations of the board," by failing to take appropriate action to manage the feelings Ms. Rogers had for him; for engaging in a sexual relationship with Annetra Hebert, the girlfriend of his VA patient whom he was treating; hiring Ms. Rogers or Ms. Hebert immediately after terminating the therapy relationship; supervising Ms. Rogers or Ms. Hebert immediately after terminating the therapy relationship; treating Ms. Roger's significant other; terminating therapy with Ms. Rogers while knowing Ms. Rogers had maladaptive behavior and continued problems; and sending Ms. Rogers 1800 text messages over a one-week period without documenting such in Ms. Roger's file.

Dr. Cerwonka violated APA Ethical Code Standard 2.06, which provides that psychologists shall, when they become aware of personal problems that may interfere with work-related duties, take appropriate measures. Cerwonka knew or should have known that Ms. Rogers had romantic feelings for him and failed to take appropriate action.

Dr. Cerwonka violated APA Ethical Code Standard 3.04, which provides that psychologists shall avoid harming their clients/patients, supervisees and others with whom they work. Cerwonka knew or should have known that Ms. Rogers had romantic feelings for him and failed to take appropriate action.

34

Dr. Cerwonka violated APA Ethical Code Standard 3.05(a)(2) and (a)(3), which provides that a psychologist should refrain from entering into a multiple relationship if it could reasonably be expected to risk exploitation or harm to the other. Cerwonka hired Ms. Rogers immediately after terminating the therapy relationship; supervised her immediately after terminating the therapy relationship; treated her significant other; terminated therapy knowing she had maladaptive behavior and continued problems; and sent her over 1800 text messages which did not appear therapeutic in nature and which were not described in the patient's file.

Dr. Cerwonka violated APA Ethical Code Standard 3.08, which provides that psychologists do not exploit persons over whom they have authority. Cerwonka should not have hired Ms. Rogers both during and after psychological treatment.

Dr. Cerwonka violated APA Ethical Code Standard 10.06, which provides that psychologists do not engage in sexual intimacies with individuals they know to be significant others of current clients/patients, by having a sexual relationship with Annetra Hebert after meeting with her in a therapy session involving her significant other who was Cerwonka's patient.

Dr. Cerwonka violated APA Ethical Code Standard 10.10, which provides that psychologists shall terminate therapy when it becomes clear that the client is being harmed by continued service, by terminating Ms. Rogers' therapy in order to engage in, at the very least, an employment relationship with her, despite the fact that her patient records indicate that her psychological state did not recommend termination of therapy.

## F.    DECISION

The purpose of the Louisiana State Board of Examiners of Psychologists is to regulate the practice of psychology in the State of Louisiana. The Board is charged with maintaining standards of professional conduct and enforcing the laws and rules and regulations pertaining to it and imposing sanctions, including suspension, revocation, probation or other restrictions when it finds by a preponderance of the evidence that a psychologist has violated the rules and regulations as outlined in La. R.S. 37:2359. It is the duty of the Board to protect the public.

The Board finds, by a preponderance of the evidence, that Cerwonka demonstrated a pattern of repeatedly failing to practice of psychology in an appropriate, ethical manner. This pattern was exploitative in nature and resulted in great harm to the public. The Board further finds that Cerwonka shows no inclination toward rehabilitation or change; rather, throughout the trial Dr. Cerwonka continually denied any wrongdoing or any breach of his ethical code of conduct.

The Board finds clear ethical violations by Dr. Cerwonka. The repeated violations demonstrate a persistent, repeated failure to follow the rules and regulations binding upon Cerwonka as a psychologist. These violations resulted in significant harm to the public. The Board finds that Cerwonka's actions were in violation of La. R.S. 37:2359(A), (B)(2)(b),[21] (B)(5), (B)(12), (B)(13), (B)(14) and APA Ethical Standards 2.06, 3.04, 3.08, 10.05, 10.06 and 10.10.

Considering the law, pleadings, evidence and arguments of counsel, and for the reasons set forth above:

**IT IS ORDERED, ADJUDGED AND DECREED** that:

1.    Eric Cerwonka's license to practice psychology in the State of Louisiana is hereby revoked;

2.    Eric Cerwonka will pay costs of all of these proceedings, which total $119,991.98, and shall consist of $4060.00 for the court reporter, $85,325.13 for the

---

[21] See n.20, *supra*.

prosecuting attorney James Raines, $6412.50 for the board attorney Amy Groves Lowe, $11,610.10 for the administrative hearing officer Lloyd J. Lunceford, $750 for the per diem paid to each Board member for attendance at the hearing, $150 for the cost of renting the room for the hearing, $375 for the cost of hotel rooms to house the board members for attendance at the hearing, $4225.11 for the investigating officer to collect evidence, and preparation and attendance at hearing, $5,700 for preparation and attendance at hearing by Dr. Sasha Lambert, $344.14 for the mileage due to the Board members attending the hearing, and $1040 for hearing security officers, and these costs must be paid within thirty (30) days after this ruling becomes final.

## G.  APPEAL RIGHTS

The Board's decision shall become final unless the Respondent files a written motion for rehearing, reopening or reconsideration by the Board within ten days from service of this decision in conformity with LAC 46:LVII.925, or files a petition for judicial review within thirty days of the issuance of this order, in conformity with La. R.S. 49:964 *et seq.*

Signed this ____ day of February, 2017, Baton Rouge, Louisiana

Darla Burnett, Ph.D.; M.P., Chair
The Louisiana State Board of Examiners of Psychologists